ORDERED.

**Dated:  February 11, 2019**

_Karen S. Jennemann_
Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re ) | |
| ) | |
| JULIE B. ZALLOUM, ) | Case No. 6:17-bk-02329-KSJ |
| ) | Chapter 13 |
| Debtor. ) | |
| ) | |

**MEMORANDUM OPINION OVERRULING
DEBTOR'S OBJECTION TO BONY'S CLAIM 5 AND GRANTING STAY RELIEF**

Debtor Julie Zalloum, helped by her husband, a related trust,[1] and perhaps an attorney who ghost writes their pleadings, has made a mockery of judicial system for years by frustrating the claims of legitimate secured creditors who hold valid liens on two homes. Debtor is manipulating the bankruptcy system and wasting the time of numerous appellate and state courts hoping to get two free homes. In this order, intended to stop the Debtor's unjustified quest, after detailing the past litigation and analyzing the Debtor's arguments, I will overrule the Debtor's objection[2] to

---

[1] The Court will refer to Julie Zalloum by her full name, Mrs. Zalloum, or the Debtor. The Court will refer to her husband as Sam Zalloum or Mr. Zalloum. The Court will refer to the 283 Bayou Circle Trust dated October 6, 2011 as the "Bayou Trust."
[2] Doc. No. 61. BONY's Response is Doc. No. 73.

1

Claim 5-1 filed by the Bank of New York ("BONY")[3] and grant BONY's request for stay relief[4] so they can continue their pending foreclosure action.

**Burden of Proof – Debtor's Objection to BONY's Claim**. Starting with the Debtor's Objection to BONY's Claim 5-1, parties bear shifting burdens of proof in asserting and challenging a bankruptcy claim. Section 502 of the Bankruptcy Code[5] states a proof of claim is presumed valid until an interested party objects. Once an objection is filed, the burden of proof shifts to the objecting party, usually a debtor or a trustee, to rebut the *prima facie* validity of the claim.[6] So what constitutes a *prima facie* claim?

A proof of claim filed under the bankruptcy rules "shall constitute *prima fac*ie evidence of the validity and amount of the claim."[7] Bankruptcy Rule 3001(c) specifies that when a claim is based on a writing, like the Note and Mortgage, a creditor must attach the original or a duplicate of the underlying writing and other supporting documentation, such as "invoices, itemized statements of running accounts, contracts."[8]

The rules rightfully require creditors to attach minimal supporting documentation for their claims so a debtor can evaluate their validity without discovery or extraordinary expense.[9] Bankruptcy Rule 3001(c) provides a debtor with "fair notice of the conduct, transaction, and occurrences that form the basis of the claim."[10] Attaching supporting documentation is a

---

[3] The creditor's full name is The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2006-0OA11, Mortgage Pass-Through Certificates, Series 2006-OA11. Shellpoint Mortgage Servicing is BONY's servicer.
[4] The Motion for Relief from Stay is Doc. No. 104. Debtor objected. Doc. No. 108. Debtor filed a Declaration in Opposition to the Motion for Relief from Stay and to the Response to Objection to Claim No. 5. Doc. No. 107.
[5] All references to the Bankruptcy Code refer to 11 U.S.C. §§ 101 *et. seq.*
[6] *In re Eddy*, 572 B.R. 774, 778–79 (Bankr. M.D. Fla. 2017).
[7] *In re Winn-Dixie Stores, Inc.*, 418 B.R. 475, 476 (Bankr. M.D. Fla. 2009) (internal quotation marks omitted).
[8] *In re Taylor*, 363 B.R. 303, 307 (Bankr. M.D. Fla. 2007).
[9] *Id.* at 308.
[10] *In re Sandifer*, 318 B.R. 609, 611 (Bankr. M.D. Fla. 2004).

mandatory prerequisite to establishing a claim's *prima facie* validity.[11] The Court finds Claim 5-1 meets the test for *prima facie* validity because the claim attached a payment history, the Note, the Mortgage, and an Assignment of Mortgage.[12]

By making her objection to BONY's claim, the Debtor must refute the legal sufficiency of the claim. As a sister court notes, the burden shifts to the objecting party to make a good argument why the claim should not be allowed as filed:

> [T]he objecting party [must]…produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. This can be done by the objecting party producing specific and detailed allegations that place the claim into dispute, by the presentation of legal arguments based upon the contents of the claim and its supporting documents ... in which evidence is presented to bring the validity of the claim into question. If the objecting party meets these evidentiary requirements, then the burden of going forward with the evidence shifts back to the claimant to sustain its ultimate burden of persuasion to establish the validity and amount of the claim by a preponderance of the evidence.[13]

Debtor raises specious arguments to refute the legal sufficiency of BONY's Claim. She asserts BONY lacks standing, the amount claimed is not due, the claim was released by a prior party, and *res judicata* bars BONY's Claim. The Court finds the Debtor has proven none of these grounds, rejects the Debtor's arguments, and will overrule the Debtor's Objection allowing Claim 5-1 for $1,054,739.22.

**BONY has Standing**. In 2006, the Debtor bought two houses. One is at 217 River Village Drive, DeBary, Florida (the "River Village House").[14] The second home, relevant to this

---

[11] *In re Taylor*, 363 B.R. at 308.
[12] Claim 5-1 and attachments.
[13] *In re Armstrong*, 320 B.R. 97, 103 (Bankr. N.D. Tex. 2005) (internal quotation marks omitted) (citations omitted); *See also In re Winn-Dixie Stores, Inc.*, 418 B.R. at 476 ("If the objecting party rebuts the prima facie validity of the proof of claim, the claimant bears the burden of persuasion to substantiate the validity and the amount of the claim by a preponderance of the evidence.").
[14] Debtor signed an Adjustable Rate Note and related Mortgage encumbering the River Village House on May 23, 2006. Issues relating to the River Village House are involved in pending Adversary Proceeding No. 17-68.

Memorandum Opinion, is at 1340 Sioux Trail in Enterprise, Florida (the "Sioux Trail House").[15] Jarvis Street Mortgage & Investment, Co. ("Jarvis") funded both purchases.[16]

On the Sioux Trail House, on March 24, 2006, the Debtor individually borrowed $650,000 from Jarvis to buy the house. She signed an adjustable rate note (the "Note").[17] A mortgage, signed by the Debtor and her husband, was executed securing the Note (the "Mortgage").[18] Debtor stopped making payments on May 1, 2009.[19] Debtor has not made a loan payment for almost ten years, continuing to either live in the house herself or rent it to others collecting substantial rental income. Debtor alternates between claiming the Sioux Trail House and the River Village House as her homestead.[20]

The Mortgage was assigned twice.[21] Jarvis almost immediately unconditionally assigned the Mortgage to Mortgage Electronic Registration Systems ("MERS") on March 30, 2006.[22] Jarvis had no further right to payment or interest in the Sioux Trail House after this first assignment in 2006.

---

[15] Claim 5-1. Some papers refer to the city as Enterprise, Florida, some refer to Deltona, Florida.
[16] BONY Exh. 20 (Note related to Sioux Trail House); Claim 6-1, p. 78 (Note related to River Village House).
[17] Trial was held over two days—June 7 and August 13, 2018. When the Court cites the transcript from the first day, it will be "___ Testimony, June 7 Transcript, ___." The second day of trial will be cited "___ Testimony, August 13 Transcript, ____." Sam Zalloum Testimony, June 7 Transcript, 49:3-7; Julie Zalloum Testimony, June 7 Transcript 137:22 through 138:2. BONY Exh. 20. Transcripts are located at Doc. Nos. 155 and 156.
[18] BONY Exh. 21.
[19] Joni Dickerson Testimony, June 7 Transcript 104:16 through 105:22, 112:23 through 113:8, 125:24 through 126:2; BONY Exh. 5.
[20] *Compare* Doc. No. 10, p. 14 (the Court assumes the Debtor attempted to claim the River Village House as exempt on her schedules, though she describes it as "Single Family," the amount listed on Schedule C matches the amount she lists for the River Village House on Schedule A); Doc. No. 146-3 in Case No. 6:13-bk-04030-KSJ (the Debtor claimed the River Village House exempt on Amended Schedule C); Doc. No. 19 in Case No. 6:13-bk-04030-KSJ (the Debtor claimed the River Village House exempt on Schedule C) *with* Doc. No. 39 in Case No. 6:13-bk-04030-KSJ (the Debtor claimed the River Village House **and** the Sioux Trail House as exempt on Schedule C); Julie Zalloum Testimony, June 7 Transcript 48:25 through 49:1-17 (Debtor testifies she lives at the Sioux Trail House but receives mail at the River Village House). The Court assumes without necessarily finding the Debtor elects to claim one home versus the other as homestead to best frustrate collection efforts of her creditors.
[21] The two Assignments of Mortgage are located at BONY Exhs. 13, 14.
[22] BONY Exh. No. 13.

BONY was named the second assignee from MERS on February 10, 2012.[23] BONY produced and the Court inspected the original Note and Mortgage relating to the Sioux Trail House.[24] BONY is the current holder of the Note and Mortgage.

Proof of a creditor's status as holder of a note underlying a mortgage is proof of purchase of the debt, and the previous ownership history of the note and mortgage is largely irrelevant.[25] Under Florida law, a mortgage, even *without* a written assignment, may travel equitably to the holder of the underlying debt, here, the entity holding the Note. Because BONY established it is the holder of the Note, it also established its ownership of the Mortgage securing the Note.[26] Here, ownership is even clearer because of the assignments of mortgage *and* because BONY holds the original Mortgage. An entity entitled to foreclose a mortgage has standing to assert a claim in a bankruptcy case. Any argument that the Bank of New York does not have constitutional or "prudential" standing or is acting with "unclean hands" is rejected.[27]

**BONY is Due $1,054,739.22**. BONY claims a balance due under the Note of $1,054,739.22.[28] Shellpoint is the servicer handling the collection of the Note and Mortgage on behalf of BONY. Shellpoint's representative, Ms. Stoltzfus, testified credibly that the amount

---

[23] BONY Exh. No. 14.

[24] Joni Dickerson Testimony, June 7 Transcript 73:12-25 through 75:1-9; Court Statement, August 13 Transcript, 49:7 through 50:7; BONY Exhs. 20, 21; August 13 Transcript, 45:20 through 50:7. The Court took a break at trial to allow the parties and me to review the original documents.

[25] *In re Balderrama*, 451 B.R. 185, 190–91 (Bankr. M.D. Fla. 2011); *See also BAC Funding Consortium Inc. ISAOA/ATIMA v. Jean-Jacques*, 28 So. 3d 936, 938 (Fla. Dist. Ct. App. 2010) ("The proper party with standing to foreclose a note and/or mortgage is the holder of the note and mortgage or the holder's representative."); *Country Place Cmty. Ass'n, Inc. v. J.P. Morgan Mortg. Acquisition Corp.*, 51 So. 3d 1176, 1179 (Fla. Dist. Ct. App. 2010); *Bank of New York v. Williams*, 979 So. 2d 347, 347 (Fla. Dist. Ct. App. 2008).

[26] *In re Balderrama*, 451 B.R. 185, 190–91 (Bankr. M.D. Fla. 2011).

[27] There is no credible evidence that Bank of New York committed fraud upon the Court or is acting with unclean hands. There is nothing in the record to support this outlandish assertion, and the Court will spend no more time on this red herring.

[28] This amount is slightly less than the amounts requested in BONY's Claim 5-1 of $1,059,927.22. Joni Dickerson Testimony, June 7 Transcript 85:23 through 87:10, 105:23 through 108:9, 113:9 through 114:16, 125:1-25; Jennifer Stoltzfus Testimony, August 13 Transcript 12:25 through 27:14. Ms. Stoltzfus testified BONY was waiving an auctioneer charge of $5,188 from the claim because their records could not substantiate the charge. Jennifer Stoltzfus Testimony, August 13 Transcript 23:6 through 24:8.

listed on the proof of claim matches their books and records. Ms. Stolzfus provided detailed and credible testimony matching up their payment history with the invoices. Bank of New York and the Debtor questioned the servicer's representatives specifically on the payment history and invoices for the claim.[29] The Court further independently reviewed the invoices provided as exhibits against Shellpoint's payment history and finds they match. BONY is due $1,054,739.22 under the Note.

The only evidence submitted on the value of the Sioux Trail House is the Volusia County Tax Bill for 2017[30]—which assesses the value of the property at $608,589—and the Debtor's schedules[31]—which value the home at $550,000. BONY is an under-secured creditor owed more than the value of the Sioux Trail House.

**<u>Debtor's "Release" is Fraudulent and Unenforceable</u>**. After defaulting on payments in 2009, the Debtor tried to modify the Mortgage.[32] No modification agreement was reached. But, during this period, a mysterious "release" was recorded (the "Release").[33] Debtor argues the Mortgage has been satisfied by the Release.

This Release is a fiction and an attempt by the Debtor and her cohorts to defraud both BONY and various courts, including this Bankruptcy Court. The relevant language of the Release, dated December 15, 2010, states:

> The undersigned, TOWN SQUARE MORTGAGE INVESTMENT INC., f/k/A JARVIS STREET MORTGAGE & INVESTMENT, CO., INC.…certifies that the mortgage, dated March 24, 2006, executed by JULIE B. ZALLOUM AND SAM ZALLOUM; WIFE AND HUSBAND, [the Mortgage] as

---

[29] *See, e.g.,* Cross-examination of Jennifer Stoltzfus, August 13 Transcript 28:5 through 45:22.
[30] BONY Exh. 8A.
[31] Doc. No. 10, p. 3.
[32] Sam Zalloum Testimony, June 7 Transcript 28:20 through 37:12, 44:1 through 47:25; Joni Dickerson Testimony, June 7 Transcript 82:6-19; Julie Zalloum Testimony, June 7 Transcript 139:13 through 140:18.
[33] BONY Exh. 2; Sam Zalloum Testimony, June 7 Transcript 27:25 through 35:25; Julie Zalloum Statement on Record, June 7 Transcript 132:1-9; Julie Zalloum Testimony, June 7 Transcript 145:15 through 147:18; Julie Zalloum Closing Argument, August 13 Transcript 73:2-5.

> mortgagor, to MERS as nominee for JARVIS STREET MORTGAGE & INVESTMENT COI., INC, AS MORTGAGEE…has been fully paid, satisfied, released, and discharged, that the property secured thereby has been released from the lien of such mortgage.

The representations in the Release are false. First, and perhaps most important, the Mortgage remains largely unpaid. Both the Debtor and her husband confirmed they stopped making payments in 2009. So, the statement in the Release that the Mortgage was paid is false.

Second, the Release was not executed by MERS, the only entity able to issue the release. MERS was not a "nominee" of Jarvis Street. Jarvis Street unconditionally assigned the Mortgage to MERS on March 30, 2006.[34] Jarvis Street retained no interest in the Mortgage after December 2006. So, Jarvis Street lacked the ability to release the debt associated with the Mortgage.[35] There was no testimony or explanation from a Jarvis Street representative about the preparation of the Release. MERS, the proper party, did not sign this fictional and unauthorized release. The Release is unenforceable and invalid.

The Release, however, rises to an actual fraud on creditors and courts when you consider Mr. Zalloum's testimony. He confirmed the Note and Mortgage were unpaid when the Release "issued." The Court asked Mr. Zalloum whether he knew the mortgage was not yet paid at the time of the Release.[36] Mr. Zalloum responded: "I knew that there is a modification and we are looking for a modification … so I did [not] say that we paid the mortgage. What I'm saying is that they

---

[34] BONY Exh. No. 13. The Corporation Assignment of Real Estate Mortgage/ Deed of Trust states: "FOR VALUE RECEIVED [Jarvis Street]…sells, assigns, transfers and sets over unto [MERS]…"all rights, title and interest of the [Jarvis Street[ in the [Mortgage]." The Assignment is unambiguous. Jarvis retained no ownership interest in the Mortgage after December 2006.
[35] *Matter of Sagamore Park Properties*, No. 94-40175, 1995 WL 1049898, at *4 (Bankr. N.D. Ind. Dec. 4, 1995), aff'd sub nom. Sagamore Park Ctr. Assocs. Ltd. P'ship v. Sagamore Park Properties, 200 B.R. 332 (N.D. Ind. 1996) ("[A] release of a mortgage executed by someone who does not have the power to do so is ineffective.").
[36] Sam Zalloum Testimony, June 7 Transcript, 35:3-11.

7

issued us a satisfaction and I am not sure who exactly paid the mortgage."[37] Debtor offers no credible explanation why any lender would issue a release for an unmodified and unpaid note and mortgage.

Debtor also failed to rebut the testimony of Patrick McGee, the well-respected Orlando lawyer whose name is listed on the Release.[38] Mr. McGee testified credibly that he had not prepared the Release and no idea where it came from.[39] He testified he had never seen the Release before February 2018, when he learned of this proceeding.[40] Mr. McGee testified he and his staff rarely, if ever, prepared releases of mortgages.[41]

More troubling, he testified specific indicators on the Release led him to conclude the Release was fraudulent. For example, the Release listed his name as "*Pat McGee*" instead of Patrick McGee.[42] In Mr. McGee's 35 years of practice, he has never called himself "Pat McGee."[43] Nothing legitimately ties Mr. McGee or his firm to the Release.[44]

Mr. Zalloum's explanation about the origin of the Release is not credible and is rejected. There is no credible evidence or testimony supporting the validity of the Release or that the Mortgage is satisfied. The Release is fraudulent and likely was fraudulently prepared by the Zalloums to avoid paying their legitimate creditors. The Note remains unpaid; the Mortgage is an enforceable encumbrance against the Sioux Trail House.

**BONY's Pending Foreclosure Action.** Shortly after receiving the assignment of the Mortgage on February 10, 2012,[45] BONY filed a foreclosure action on the Note and Mortgage in

---

[37] Sam Zalloum Testimony, June 7 Transcript, 35:6-16.
[38] Patrick McGee Testimony, June 7 Transcript, 10:12-25 through 16:1-15.
[39] Patrick McGee Testimony, June 7 Transcript, 10:12-25 through 16:1-15, and 23:18-25 through 25:1-25.
[40] Patrick McGee Testimony, June 7 Transcript, 14:18-20.
[41] Patrick McGee Testimony, June 7 Transcript, 15:8-15.
[42] Patrick McGee Testimony, June 7 Transcript, 16:1-4.
[43] Patrick McGee Testimony, June 7 Transcript, 16:1-4.
[44] Patrick McGee Testimony, June 7 Transcript 24:24 through 25:18.
[45] BONY Exh. No. 14.

Volusia County, Florida[46] (the "State Court Case"). BONY has attempted to collect the Note and foreclose the Mortgage encumbering the Sioux Trail House for almost seven years. Debtor continually has obstructed BONY's efforts to collect the outstanding debt.

Debtor now claims the State Court Case is dismissed.[47] She is wrong. The State Court Case is "inactive" only because the Debtor has filed repeated bankruptcy proceedings. Each time a bankruptcy case is filed, the automatic stay arises,[48] which prevents BONY from continuing the State Court Case. BONY consistently has asked this Court to modify the automatic stay to allow it to proceed with the State Court Case. One example is the instant Motion for Relief[49] from Stay that the Court later will grant in this Memorandum Opinion.

**Debtor and her Husband, Sam Zalloum, have Abused the Bankruptcy System.** Several bankruptcy cases and adversary proceedings have been filed and multiple appeals have been pursued by the Debtor, Sam Zalloum, and the Bayou Trust.[50]

Debtor filed her first Chapter 13 case in 2013.[51] Debtor's case was dismissed when she failed to file an Amended Chapter 13 Plan as the Court instructed her specifically to do by a date

---

[46] Case No 2012-12455-CIDL in the Circuit Court for Volusia County, Florida, Civil Division. BONY Exh. No. 10.
[47] Julie Zalloum Testimony, June 7 Transcript, 142:10 through 144:14 (acknowledging the State Court Case); Julie Zalloum Testimony, August 13 Transcript 57:7 - 59:8.
[48] 11 U.S.C. § 362. *See also In re Hanson*, 526 B.R. 916, 919 (Bankr. M.D. Fla. 2015) ("The stay arises as a matter of law upon the commencement of a bankruptcy case, and generally continues until the case is closed or dismissed or a debtor receives his [or her] discharge."); *In re Newgent Golf, Inc.*, 402 B.R. 424, 433 (Bankr. M.D. Fla. 2009) ("The automatic stay is effective against the world regardless of whether a party had notice of the bankruptcy filing or of the automatic stay. … The automatic stay instantaneously arises upon the filing of a bankruptcy petition and words to protect the debtor and the property of the debtor's estate from the claims of competing creditors racing to gain an advantage.").
[49] Doc. No. 104.
[50] *See, e.g.*, Case No. 6:13-bk-04030-KSJ (Chapter 13 filed by Julie Zalloum in 2013), 6:13-ap-00127-KSJ (adversary proceeding filed by Sam Zalloum against River Oaks Community Services Association, Inc. in 2013), 6:13-bk-04561-KSJ (Chapter 7 filed by the Bayou Trust in 2013), 6:13-ap-00124-KSJ (adversary proceeding filed by the Bayou Trust against River Oaks Community Services Association, Inc. in 2013), 6:15-ap-00153-KSJ (adversary proceeding filed by Sam Zalloum against a bank, a trust, and two law firms in 2015), 6:14-bk-02971-KSJ (Chapter 11 filed by the Bayou Trust in 2014). There were multiple appeals from these cases, some are still pending.
[51] Case No. 6:13-bk-04030-KSJ.

certain.[52] This bankruptcy case has been up to the District Court and Eleventh Circuit on several appealed orders.[53] Sam Zalloum filed an adversary proceeding in his wife's 2013 bankruptcy case against non-debtor parties. The Court dismissed that adversary proceeding for lack of jurisdiction because it could not resolve claims entirely between the non-debtor parties.[54]

So, Mr. Zalloum then filed a Chapter 7 bankruptcy case on behalf of Bayou Trust.[55] The Bayou Trust had an interest in property in the same area as the River Village House. Stay relief was granted so the secured creditor could proceed with foreclosure.[56] Mr. Zalloum sought appellate review of this ruling, and the District Court affirmed the Bankruptcy Court's order granting stay relief.[57] The District Court questioned why Mr. Zalloum was involved in an appeal of the stay relief order when it stated: "As an initial matter, it is not entirely clear who Mr. Zalloum is or why he is involved in this bankruptcy case or appeal."[58] Zalloum's arguments were ultimately rejected.

Two adversary proceedings were initiated related to the Bayou Trust bankruptcy case. One adversary proceeding was brought by Mr. Zalloum against a homeowner's association.[59] The Bankruptcy Court granted the homeowner's association's Motion for Summary Judgment and

---

[52] Doc. No. 249 in Case No. 6:13-bk-04030-KSJ (entered March 6, 2015).
[53] *See, e.g.,* Case No. 6:15-cv-404-Orl-40 in the United States District Court for the Middle District of Florida (appeal of Order Dismissing Case in 6:13-bk-04030-KSJ); Case No. 16-10761-CC in the United States Court of Appeals for the Eleventh Circuit (appeal of Order Dismissing Case in 6:13-bk-04030-KSJ). The Eleventh Circuit remanded to the District Court because the Bankruptcy Court had not ruled on a Motion for Reconsideration of the Order Dismissing Case. The District Court then remanded to the Bankruptcy Court to rule upon the Motion for Reconsideration. Doc. No. 291 in Case No. 6:13-bk-04030-KSJ. The Motion for Reconsideration was denied. Doc. No. 296 in Case No. 6:13-bk-04030-KSJ. That Order was also appealed to the District Court. The District Court affirmed the Bankruptcy Court's Order. *See* Case No. 6:17-cv-561-Orl-40 in the United States District Court for the Middle District of Florida. A copy of the District Court's Order is on the Bankruptcy Court's docket. Doc. No. 331 in Case No. 6:13-bk-04030-KSJ (Entered February 1, 2018). Debtor also sought appellate review of an Order Granting Motion for Relief from Stay. Case No. 6:17-cv-881-Orl-41 in the United States District Court for the Middle District of Florida. The District Court dismissed that appeal because the Bankruptcy Court had dismissed the Debtor's case. Doc. No. 333 in Case No. 6:13-bk-04030-KSJ (entered July 2, 2018).
[54] Doc. No. 70 in Adversary No. 6:13-ap-00127-KSJ (Entered April 24, 2014).
[55] Case No. 6:13-bk-04561-KSJ.
[56] Doc. No. 109 in Case No. 6:13-bk-04561-KSJ (entered November 23, 2015).
[57] Doc. No. 154 in Case No. 6:13-bk-04561-KSJ (entered September 6, 2016) (District Court Case No. 6:15-cv-2068).
[58] Doc. No. 154, p. 3 in Case No. 6:13-bk-04561-KSJ (entered September 6, 2016).
[59] Adversary No. 6:13-ap-00124-KSJ.

abstained from further action. The issue was whether unpaid homeowner's association dues constituted a lien against the Bayou Trust property—the Court found the dues constituted a valid and enforceable lien on the property but returned the dispute to state court to calculate the amount owed.[60] Mr. Zalloum sought appellate review of the Court's opinion, and the District Court affirmed the Bankruptcy Court.[61] The District Court made a specific finding that Mr. Zalloum's appeal was "meritless and frivolous."[62] Another adversary proceeding related to the Bayou Trust case was brought by Mr. Zalloum against various law firms and another trust.[63] This adversary proceeding eventually was dismissed without prejudice.[64] Mr. Zalloum again sought appellate review of the Bankruptcy Court's dismissal order (and other orders the Bankruptcy Court entered on reconsideration motions), and the District Court affirmed.[65]

About a year after Mr. Zalloum filed the Chapter 7 case on behalf of the Bayou Trust, Mr. Zalloum then filed an involuntary Chapter 11 petition **against** the Bayou Trust.[66] The Court dismissed the involuntary petition and cautioned Mr. Zalloum that if he filed another involuntary petition involving the Bayou Trust, the Court would assess sanctions against him.[67] The Chapter 7 Trustee eventually concluded her administration of Bayou Trust in March 2017.[68] No assets were distributed to creditors.

---

[60] Doc. No. 144 in Adversary No. 6:13-ap-00124-KSJ (entered March 6, 2015).
[61] Doc. No. 188 in Adversary No. 6:13-ap-00124-KSJ (entered November 29, 2016) (District Court Case No. 6:15-cv-540).
[62] Doc. No. 188, p. 7 in Adversary No. 6:13-ap-00124-KSJ (entered November 29, 2016).
[63] Adversary No. 6:15-ap-00153-KSJ.
[64] Doc. No. 35 in Adversary No. 6:15-ap-00153-KSJ.
[65] Doc. No. 64 in Adversary No. 6:15-ap-00153-KSJ (entered February 22, 2017) (District Court Case No. 6:16-cv-1361) (the District Court could not review two of the orders requested because Mr. Zalloum's appeals were untimely, however, the one Order the District Court substantively reviewed was affirmed).
[66] Case No. 6:14-bk-02971-KSJ. The case was filed on March 17, 2014.
[67] Doc. No. 11 in Case No. 6:14-bk-02971-KSJ (entered April 10, 2014).
[68] Doc. No. 158 in Case No. 6:13-bk-4561-KSJ.

In the Debtor's current case and second Chapter 13 bankruptcy, there are two adversary proceedings pending. One will be addressed by a separate order on pending dispositive motions.[69] Debtor filed an adversary proceeding against BONY largely duplicative of the matters discussed in this opinion.[70] The Court concludes this related adversary proceeding was filed primarily to delay the trial held on the Debtor's Objection to BONY's Claim. The Court will issue a separate order to show cause why that adversary proceeding should not be dismissed due to this memorandum opinion.

The Debtor and Bayou Trust have filed four bankruptcies and five separate adversary proceedings. Each case involves suspect and similar facts indicating these parties merely want to obstruct collection efforts of legitimate creditors by any means possible. They have a pattern of filing meritless, frivolous, and outlandish papers to stall the inevitable conclusion they cannot keep these pieces of property without paying for them. It is time for this abuse of the courts to end.

***Res Judicata* does not Bar BONY's Claim 5-1**. Debtor argues *res judicata* bars BONY's Claim because a previous order in the Debtor's prior bankruptcy case struck the claim. On the Debtor's *res judicata* argument, the Debtor is correct that the Court sustained her Objection to BONY's claim in the previous bankruptcy case.[71] However, the Court's Order sustaining the Objection specifically allowed BONY to file an amended claim.[72] Debtor references the Order's language that provides if there is no objection to BONY's amended claim, it would be allowed as a general unsecured claim.[73] The problem with the Debtor's argument is there *was* another objection to BONY's amended claim.

---

[69] Adversary No. 6:17-ap-00068-KSJ.
[70] Adversary No. 6:18-ap-00039-KSJ.
[71] Doc. No. 136 in Case No. 6:13-bk-04030-KSJ (entered May 1, 2014).
[72] *Id.*
[73] *Id.*

BONY, as permitted, timely filed its amended claim.[74] Debtor then objected to BONY's amended claim.[75] Debtor's Objection was erroneously sustained, and, when the Court found the mistake, vacated the improperly entered order sustaining the Debtor's objection to BONY's amended claim.[76] Hearings on the Debtor's Objection to BONY's amended claim were scheduled.[77] Before a *final* hearing occurred, however, the Debtor's bankruptcy case was dismissed.[78] The validity and allowability of BONY's pending amended claim was never resolved because of this intervening dismissal.

So, Debtor's *res judicata* argument fails. Under the federal test for *res judicata*: "'*Res judicata* applies not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact.'"[79] Four elements must be met: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action."[80] If these elements are met, the Court must then determine whether the claim could have been raised in the prior suit.[81] When considering whether the cases involve the same cause of action, the Court evaluates any commonality in the "nucleus of operative facts" of the action.[82] The Eleventh Circuit explained

---

[74] BONY filed its claim on June 25, 2014. *See* Claim 8-2 in Claims Register in Case No. 6:13-bk-04030-KSJ (amended claim filed in the amount of $871,318.11).
[75] Doc. No. 175 in Case No. 6:13-bk-04030-KSJ (filed July 16, 2014).
[76] Doc. No. 176, 179 in Case No. 6:13-bk-04030-KSJ.
[77] Doc. No. 205 in Case No. 6:13-bk-04030-KSJ (entered October 14, 2014); Doc. No. 234 in Case No. 6:13-bk-04030-KSJ (entered November 19, 2014).
[78] Doc. No. 249 in Case No. 6:13-bk-04030-KSJ (entered March 6, 2015).
[79] *Moore v. Pak*, 402 F. App'x 491, 493 (11th Cir. 2010) (quoting *Manning v. City of Auburn*, 953 F.2d 1355, 1358–59 (11th Cir. 1992)).
[80] *Moore v. Pak*, 402 F. App'x at 493 (quoting *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001); *See also Russell v. Redstone Fed. Credit Union*, 710 F. App'x 830, 832 (11th Cir. 2017), cert. denied, No. 18-5765, 2018 WL 4190076 (U.S. Nov. 5, 2018) (setting out test for *res judicata*); *Borrero v. United Healthcare of New York, Inc.*, 610 F.3d 1296, 1306 (11th Cir. 2010) (setting out test for *res judicata*).
[81] *Moore v. Pak*, 402 F. App'x at 493.
[82] *Borrero v. United Healthcare of New York, Inc.*, 610 F.3d at 1308.

that "[courts should] line up the former and current cases side-by-side to assess their factual similarities."[83] Here, *res judicata* does not apply because there is no final order determining the allowability or validity of BONY's claim.

Further, the Debtor did not propose to pay BONY in her earlier Chapter 13 case. The Eleventh Circuit Court of Appeals recently ruled that a Chapter 13 debtor cannot eliminate a claim not treated within a Chapter 13 Plan.[84] Debtor had not provided for BONY's claim through her previous Chapter 13 Plan, so no argument even exists that the claim was eliminated.[85] Even if she had provided for BONY's claim in her Chapter 13 Plan, the Plan was never confirmed. Debtor has established no defense or objection to BONY's Claim 5-1. Debtor's Objection[86] is overruled. BONY's Claim 5-1 is allowed for $1,054,739.22.

**Stay Relief is Merited to Allow BONY to Proceed with its Foreclosure.** BONY asks to the Court to modify the automatic stay to complete the foreclosure of the Sioux Trail House, pending since 2012.[87] The automatic stay is imposed to give honest debtors a hiatus from constant creditor collection actions.[88] The stay is not intended to reward abusive debtors by continually keeping creditors from collecting legitimate claims.

Here, the Debtor helped by her husband has successfully prevented BONY from foreclosing on the Sioux Trail House since 2012. She has not made a single payment, relying on a fraudulent Release to argue the debt is not due. She and her husband have filed four bankruptcies and five adversary proceedings all intending to delay and frustrate creditor claims. Simultaneously,

---

[83] *Borrero v. United Healthcare of New York, Inc.*, 610 F.3d at 1309.
[84] *Dukes v. Suncoast Credit Union (In re Dukes)*, 909 F.3d 1306 (11th Cir. 2018).
[85] *In re Dukes*, 909 F.3d at 1312.
[86] Doc. No. 61.
[87] Doc. No. 104.
[88] *In re 31 Tozer Rd., LLC*, No. 17-CV-10013-IT, 2018 WL 340028, at *2 (D. Mass. Jan. 9, 2018).

the Debtor and her husband are and enjoying the use of these homes, likely collecting monthly rental income since 2009.

BONY has demonstrated sufficient cause to justify stay relief under § 362(d)(1) of the Bankruptcy Code. Debtor has demonstrated a disregard for all courts, including the Bankruptcy Court, in her effort to delay paying her creditors. Stay relief is appropriate to allow the parties to return to the State Court Case and proceed till its conclusion. Further, under § 362(d)(4)(B), I would find that the Debtor has filed multiple bankruptcies to delay, hinder, or defraud BONY and, BONY is entitled to stay relief in this or any other case filed by the Debtor or any entity affecting BONY's ability to complete its foreclosure action within two years of the date this order becomes final.

Alternatively, BONY has proven that the Sioux Trail House is not needed for an effective reorganization and the Debtor has no equity in the home justifying stay relief under § 362(d)(2).[89] BONY has a valid and enforceable security interest in the home established by the Note and Mortgage. Debtor has no equity because the amount due to BONY exceeds the Debtor's and Tax Collector's value of the Property.

Debtor has made no credible argument that the Property is necessary to an effective reorganization. Her current Chapter 13 Plan[90] provides for monthly payments of $275 per month. $25 goes to the Chapter 13 Trustee, and $250 goes to an association. She proposes **no** payment to BONY on its $1 million claim.

---

[89] *In re Bagwell*, 741 F. App'x 755, 759 (11th Cir. 2018) (citing and quoting *In re Albany Partners, Ltd.*, 749 F.2d 670, 673 (11th Cir. 1984)).
[90] Doc. No. 11.

The automatic stay is modified to permit BONY to continue with the pending State Court Case through completion and to provide prospective relief for a two-year period regardless of any future bankruptcy cases filed.

**Conclusion**. Debtor has filed this case in bad faith and intending to make a mockery of the bankruptcy systems and courts in general. She has no legitimate defense to the claims of BONY and her other creditors addressed in separate orders. The Court will overrule the Debtor's Objection, allow BONY's Claim 5-1 for $1,054,739.22, and modify the automatic stay to allow BONY to complete its pending foreclosure of the Sioux Trail House regardless of any future bankruptcy cases filed by the Debtor or her cohorts. Separate orders consistent with this ruling will issue.

###

The Clerk is directed to serve a copy of this memorandum opinion on all interested parties.