ORDERED.

**Dated:  July 01, 2019**

Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| JULIE B. ZALLOUM, | ) | Case No.  6:17-bk-02329-KSJ |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| JULIE B. ZALLOUM, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adversary No. 6:17-ap-00068-KSJ |
| | ) | |
| RIVER OAKS COMMUNITY SERVICES ASSOCIATION, INC. et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION DISMISSING CASE, OVERRULING
DEBTOR'S OBJECTION TO U.S. BANK'S CLAIM 6-1, GRANTING STAY RELIEF
AND ENTERING FINAL JUDGMENT IN ADVERSARY PROCEEDING 17-68**

71693309v.1

Debtor Julie Zalloum, helped by her husband, a related trust,[1] and perhaps an attorney who ghost writes their pleadings, has made a mockery of judicial system for years by taking actions calculated to (and, in fact, have) frustrated the claims of legitimate secured creditors who hold valid liens on two homes. Debtor is manipulating the bankruptcy system and wasting the time of numerous appellate and state courts hoping to get two free homes. In this order, intended to end the Debtor's unjustified quest, after detailing the past litigation and analyzing the Debtor's arguments, I will overrule the Debtor's objection[2] to Claim 6-1 filed by U.S. Bank,[3] grant U.S. Bank's request for stay relief[4] so they can proceed with a foreclosure action, and confirm the enforceability of their mortgage lien.  I will further find that the Debtor has filed this bankruptcy case in bad faith and will dismiss this action and impose a permanent injunction barring the Debtor from filing another bankruptcy case.

**Debtor's Non-Appearance** .  On the eve of trial, the Debtor filed a Notice of Voluntary Dismissal.[5]  In this Notice, the Debtor admitted knowledge of the trial and the Court's denial of her prior request to continue it.[6]  The trial originally was scheduled in open court on February 21, 2019, in consultation with the Debtor who was present at this hearing.  The Court also mailed the order scheduling trial to her.[7]  So, the Debtor knew about the trial and decided not to come or present evidence.  She even filed her witness and exhibit list on May 29, 2019.[8]  Notwithstanding

---

[1] The Court will refer to Julie Zalloum by her full name, Mrs. Zalloum, or the Debtor. The Court will refer to her husband as Sam Zalloum or Mr. Zalloum. The Court will refer to the 283 Bayou Circle Trust dated October 6, 2011 as the "Bayou Trust."
[2] Doc. No. 52. U.S. Bank's Response is Doc. No. 56.
[3] The creditor's full name is U.S. Bank National Association, as Trustee for MASTR Adjustable Rate Mortgages Trust 2006-OA2 Mortgage Pass-Through Certificates, Series 2006-OA2.  Ocwen Loan Servicing, LLC is U.S. Bank's servicer.
[4] The Motion for Relief from Stay is Doc. No. 30.
[5] Doc. No. 200.  The Notice of Voluntary Dismissal was filed on June 12, 2019.
[6] Doc. Nos. 268 and 270 filed in 6:17-ap-68.
[7] Doc. No. 246 in 6:17-ap-68.  The scheduling order was mailed on February 25, 2019.
[8] Doc. No. 273 in 6:17-ap-68.

Debtor's knowing default and failure to appear to present evidence or argument on her behalf, the Court required U.S. Bank to present evidence to support its claim and request for stay relief. The trial proceeded.

**Burden of Proof – Debtor's Objection to U.S. Bank's Claim**. Starting with the Debtor's Objection to U.S. Bank's Claim 6-1, parties typically bear shifting burdens of proof in asserting and challenging a bankruptcy claim. Section 502 of the Bankruptcy Code[9] states a proof of claim is presumed valid until an interested party objects. Once an objection is filed, the burden of proof falls upon the objecting party, usually a debtor or a trustee, to rebut the *prima facie* validity of the claim.[10] So what constitutes a *prima facie* claim?

A proof of claim filed under the bankruptcy rules "shall constitute *prima fac*ie evidence of the validity and amount of the claim."[11] Bankruptcy Rule 3001(c) specifies that when a claim is based on a writing, like the Note and Mortgage, a creditor must attach the original or a duplicate of the underlying writing and other supporting documentation, such as "invoices, itemized statements of running accounts, contracts."[12]

The rules rightfully require creditors to attach minimal supporting documentation for their claims so a debtor can evaluate their validity without discovery or extraordinary expense.[13] Bankruptcy Rule 3001(c) provides a debtor with "fair notice of the conduct, transaction, and occurrences that form the basis of the claim."[14] Attaching supporting documentation is a mandatory prerequisite to establishing a claim's *prima facie* validity.[15] The Court finds Claim 6-1

---

[9] All references to the Bankruptcy Code refer to 11 U.S.C. §§ 101 *et. seq.*
[10] *In re Eddy*, 572 B.R. 774, 778–79 (Bankr. M.D. Fla. 2017).
[11] *In re Winn-Dixie Stores, Inc.*, 418 B.R. 475, 476 (Bankr. M.D. Fla. 2009) (internal quotation marks omitted).
[12] *In re Taylor*, 363 B.R. 303, 307 (Bankr. M.D. Fla. 2007).
[13] *Id*. at 308.
[14] *In re Sandifer*, 318 B.R. 609, 611 (Bankr. M.D. Fla. 2004).
[15] *In re Taylor*, 363 B.R. at 308.

3

meets the test for *prima facie* validity because the claim attached a payment history, and copies of the Note, the Mortgage, and an Assignment of Mortgage.[16]

      To support her objection to U.S. Bank's claim, the Debtor had to refute the legal sufficiency of the claim. As a sister court notes, the burden shifts to the objecting party to make a good argument why the claim should not be allowed as filed:

> [T]he objecting party [must]...produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. This can be done by the objecting party producing specific and detailed allegations that place the claim into dispute, by the presentation of legal arguments based upon the contents of the claim and its supporting documents ... in which evidence is presented to bring the validity of the claim into question. If the objecting party meets these evidentiary requirements, then the burden of going forward with the evidence shifts back to the claimant to sustain its ultimate burden of persuasion to establish the validity and amount of the claim by a preponderance of the evidence.[17]

      In her written objection, the Debtor raised specious arguments to refute the legal sufficiency of U.S. Bank's Claim. She asserts U.S. Bank lacks standing, the claim was released by a prior party, and that U.S. Bank committed intrinsic and extrinsic fraud. Debtor failed, however, to appear and present any evidence to support her challenge to the validity of U.S. Bank's proof of claim.

      In an abundance of caution and to stop this frivolous litigation once and for all, the Court required U.S. Bank to present its full case through admissible evidence, even though the burden of proof never shifted to U.S. Bank due to the Debtor's non-participation . U.S. Bank rose to this challenge and presented ample admissible evidence to support the validity of its proof of claim. As this Memorandum Opinion details, U.S. Bank's evidence more than exceeded any burden of

---

[16] Claim 6-1 and attachments.

[17] *In re Armstrong*, 320 B.R. 97, 103 (Bankr. N.D. Tex. 2005) (internal quotation marks omitted) (citations omitted); *See also In re Winn-Dixie Stores, Inc.*, 418 B.R. at 476 ("If the objecting party rebuts the prima facie validity of the proof of claim, the claimant bears the burden of persuasion to substantiate the validity and the amount of the claim by a preponderance of the evidence.").

71693309v.1

persuasion U.S. Bank would have had even had Debtor come forward with sufficient evidence to rebut the proof of claim's presumptive validity. The Court rejects the Debtor's arguments and will overrule the Debtor's Objection allowing Claim 6-1 for $553,876.43.

**U.S. Bank has Standing**. In 2006, the Debtor bought two houses. The first one - which relates to this opinion - is at 217 River Village Drive, DeBary, Florida (the "River Village House").[18] The second home is at 1340 Sioux Trail in Enterprise, Florida (the "Sioux Trail House"). Jarvis Street Mortgage & Investment, Co. ("Jarvis") funded both purchases.

On May 23, 2006, the Debtor individually borrowed $431,250 from Jarvis to buy the River Village House. She signed an adjustable rate note (the "Note").[19] The Court examined the original promissory note and assignments at trial. A mortgage, also signed by the Debtor, was executed securing the Note (the "Mortgage").[20]

The loan is due for August 1, 2012.[21] Debtor has not made a loan payment in several years, continuing to either live in the house herself or rent it to others collecting substantial rental income. Debtor alternates between claiming the Sioux Trail House and the River Village House as her homestead.[22]

Jarvis almost immediately unconditionally assigned the Mortgage to Mortgage Electronic Registration Systems ("MERS"), as nominee for MortgageIT, on May 31, 2006.[23] Jarvis had no

---

[18] Debtor signed an Adjustable Rate Note and related Mortgage encumbering the River Village House on May 23, 2006.

[19] U.S. Bank Exh. 1.

[20] U.S. Bank Exh. 2.

[21] Frederick Denson Testimony, June 13, 2019. U.S. Bank Exh. 8.

[22] *Compare* Doc. No. 10, p. 14 (the Court assumes the Debtor attempted to claim the River Village House as exempt on her schedules, though she describes it as "Single Family," the amount listed on Schedule C matches the amount she lists for the River Village House on Schedule A); Doc. No. 146-3 in Case No. 6:13-bk-04030-KSJ (the Debtor claimed the River Village House exempt on Amended Schedule C); Doc. No. 19 in Case No. 6:13-bk-04030-KSJ (the Debtor claimed the River Village House exempt on Schedule C) *with* Doc. No. 39 in Case No. 6:13-bk-04030-KSJ (the Debtor claimed the River Village House **and** the Sioux Trail House as exempt on Schedule C); the Court assumes without necessarily finding the Debtor elects to claim one home versus the other as homestead to best frustrate collection efforts of her creditors.

[23] U.S. Bank Exh. No. 3.

further right to payment or interest in the River Village House or the Mortgage after this assignment in 2006.  Again, the Court saw the original signed assignment.

Proof of a creditor's status as holder of a note underlying a mortgage is proof of purchase of the debt, and the previous ownership history of the note and mortgage is largely irrelevant.[24] Under Florida law, a mortgage, even *without* a written assignment, may travel equitably to the holder of the underlying debt, here, the entity holding the Note. Because U.S. Bank established it is the holder of the Note, it also established its ownership of the Mortgage securing the Note.[25] Here, ownership is even clearer because of the Pooling and Servicing Agreement and Mortgage Loan Schedule.[26]  An entity entitled to foreclose a mortgage has standing to assert a claim in a bankruptcy case. Any argument that U.S. Bank does not have constitutional or "prudential" standing or is acting with "unclean hands" is rejected.[27]

**U.S. Bank is Due $553,876.43.** U.S. Bank claims a balance due under the Note of $553,876.43.[28] Ocwen is the servicer handling the collection of the Note and Mortgage on behalf of U.S. Bank. Ocwen's representative, Mr. Denson, testified credibly that the amount listed on the proof of claim matches their books and records. Mr. Denson provided detailed and credible testimony matching up their payment history with the invoices. U.S. Bank questioned the servicer's representative specifically on the payment history and invoices for the claim. Ocwen is due $553,876.42 under the Note as of August 31, 2017, the date Claim 6-1 was filed.

---

[24] *In re Balderrama*, 451 B.R. 185, 190–91 (Bankr. M.D. Fla. 2011); *See also BAC Funding Consortium Inc. ISAOA/ATIMA v. Jean-Jacques*, 28 So. 3d 936, 938 (Fla. Dist. Ct. App. 2010) ("The proper party with standing to foreclose a note and/or mortgage is the holder of the note and mortgage or the holder's representative."); *Country Place Cmty. Ass'n, Inc. v. J.P. Morgan Mortg. Acquisition Corp.*, 51 So. 3d 1176, 1179 (Fla. Dist. Ct. App. 2010); *Bank of New York v. Williams*, 979 So. 2d 347, 347 (Fla. Dist. Ct. App. 2008).
[25] *In re Balderrama*, 451 B.R. 185, 190–91 (Bankr. M.D. Fla. 2011).
[26] U.S. Bank Exhs. 6 and 7.
[27] There is no evidence that U.S. Bank committed fraud upon the Court or is acting with unclean hands. There is nothing in the record to support this outlandish assertion, and the Court will spend no more time on this red herring.
[28] Claim 6-1.

71693309v.1

**Debtor's "Release" is Fraudulent and Unenforceable**. Several years ago, and following the original lender's assignment of the mortgage, a mysterious "release" was recorded (the "Release").[29] Debtor alleges that the Mortgage has been satisfied by the release.

This Release is a fiction and an attempt by the Debtor and her cohorts to defraud both U.S. Bank and various courts, including this Bankruptcy Court. The language of the Release, dated December 30, 2010, states:

> The undersigned, TOWN SQUARE MORTGAGE & INVESTMENT INC., F/K/A JARVIS STREET MORTGAGE & INVESTMENT, CO., INC....certifies that the mortgage, dated May 23, 2006, executed by JULIE B. ZALLOUM a married woman [the Mortgage], as mortgagor, to JARVIS STREET MORTGAGE & INVESTMENT CO., INC., as mortgagee...has been fully paid, satisfied, released, and discharged, and that the property secured thereby has been released from the lien of such mortgage.

The representations in the Release are false. First, and perhaps most important, the Mortgage remains largely unpaid. So, the statement in the Release that the Mortgage was paid is false.

Second, the Release was not executed by MERS, the only entity that could have issued the release. MERS was not a "nominee" of Jarvis Street. Jarvis Street unconditionally assigned the Mortgage to MERS on May 31, 2006.[30] Jarvis Street retained no interest in the Mortgage after May 2006. So, Jarvis Street lacked the ability to release the debt associated with the Mortgage or to execute the purported Release of Mortgage.[31] There was no testimony or explanation from a

---

[29] U.S. Bank Exh. 17.

[30] U.S. Bank Ex. No. 3. The Corporation Assignment of Real Estate Mortgage/ Deed of Trust states: "FOR VALUE RECEIVED [Jarvis Street]...sells, assigns, transfers and sets over unto [MERS]..."all rights, title and interest of the [Jarvis Street[ in the [Mortgage]." The Assignment is unambiguous. Jarvis retained no ownership interest in the Mortgage after May 2006.

[31] *Matter of Sagamore Park Properties*, No. 94-40175, 1995 WL 1049898, at *4 (Bankr. N.D. Ind. Dec. 4, 1995), aff'd sub nom. *Sagamore Park Ctr. Assocs. Ltd. P'ship v. Sagamore Park Properties*, 200 B.R. 332 (N.D. Ind. 1996) ("[A] release of a mortgage executed by someone who does not have the power to do so is ineffective.").

Jarvis Street representative about preparing the Release.[32] MERS, the proper party, did not sign this fictional and unauthorized release. The Release is unenforceable and invalid.

The Release, however, rises to an actual fraud on creditors and courts when you consider the testimony of Patrick McGee, the well-respected Orlando lawyer whose name is listed on the Release.[33] Mr. McGee testified credibly that he had not prepared the Release and did not understand where it came from.[34] Mr. McGee testified he and his staff rarely, if ever, prepared releases of mortgages.[35]

More troubling, he testified specific indicators on the Release led him to conclude the Release was fraudulent. For example, the Release listed his name as "*Pat McGee*" instead of Patrick McGee.[36] In Mr. McGee's 35 years of practice, he has never referred to himself "Pat McGee," in a legal document.[37] Nothing legitimately ties Mr. McGee or his firm to the Release.[38]

There is no credible evidence or testimony supporting the validity of the Release, that it was executed by a person with authority to do so or that the Mortgage is satisfied. The Release is fraudulent. The Release likely was fraudulently prepared by the Zalloums to avoid paying their legitimate creditors. The Note remains unpaid. The Mortgage never was released and is (and at all times remained) a valid and enforceable encumbrance against the River Village House. The Release is void, of no force and effect, and effectuated no release or satisfaction of the Mortgage.

---

[32] Debtor filed her witness list and listed no Jarvis-related witness. (Doc. No. 271 and 273 in related Adversary Proceeding 17-68.) Instead, the Debtor intended to rely solely on the testimony of her husband, Sam Zalloum, regarding his out of court conversations with someone at Jarvis. Although the Court, of course, cannot make any evidentiary ruling with respect to Mr. Zalloum's *likely* testimony absent a proffer, it appears unlikely that Mr. Zalloum's testimony, even if offered, would have been admissible hearsay, at least as to his conversations with Jarvis.

[33] Patrick McGee Testimony, June 13, 2019.

[34] Patrick McGee Testimony, June 13, 2019.

[35] Patrick McGee Testimony, June 13, 2019.

[36] Patrick McGee Testimony, June 13, 2019.

[37] Patrick McGee Testimony, June 13, 2019.

[38] Patrick McGee Testimony, June 13, 2019.

**Final Judgment for U.S. Bank in Adversary Proceeding 17-68.**  Debtor filed Adversary Proceeding 17-68 against U.S. Bank and the associations/ individuals who manage the development where the River Village House is located.  Most issues were finally resolved in prior orders.[39]  Two counts remain—Count 8 brought by the Debtor against U.S. Bank, and the Counterclaim brought by U.S. Bank against the Debtor.  Both counts essentially seek a declaratory judgment that U.S. Bank does (or does not) have a valid and enforceable mortgage lien encumbering the River Village Home.[40]  Now, after trial and based on the rulings in this Memorandum Opinion, the Court concludes that U.S. Bank has a valid and enforceable first priority mortgage lien encumbering the River Village Home.  Final Judgment for U.S. Bank and against the Debtor shall be entered by separate order; however, this Court will defer to the Florida State Court to assess attorney fees and costs, which likely are substantial, in U.S. Bank's efforts to foreclose on the River Village House.

**Stay Relief is Merited to Allow U.S. Bank to Proceed with Foreclosure**. U.S. Bank asks and is entitled to modify the automatic stay to complete its foreclosure of the River Village House.  The automatic stay is imposed to give honest debtors a hiatus from constant creditor collection actions.[41] The stay is not intended to reward abusive debtors by continually keeping creditors from collecting legitimate claims.

Here, the Debtor helped by her husband has successfully, and improperly, delayed U.S. Bank from foreclosing on the River Village House.  She has not made a payment in several years, relying on a fraudulent Release to argue the debt is not due. She and her husband have filed four bankruptcies and five adversary proceedings all intending to delay and frustrate creditor claims.

[39] Doc. Nos. 234, 237, and 238.
[40] Doc. Nos. 23 and 64 in Adversary Proceeding 17-28, best frame this issue.
[41] *In re 31 Tozer Rd., LLC*, No. 17-CV-10013-IT, 2018 WL 340028, at *2 (D. Mass. Jan. 9, 2018).

Simultaneously, the Debtor and her husband are enjoying the use of these homes, likely collecting monthly rental income since 2009.

U.S. Bank has demonstrated sufficient cause for stay relief under § 362(d)(1) of the Bankruptcy Code. Debtor has demonstrated a disregard for all courts, including the Bankruptcy Court, in her effort to delay paying her creditors. Stay relief is appropriate to allow U.S. Bank to proceed with foreclosure of the River Village House.  Further, under § 362(d)(4)(B), I would find that the Debtor has filed multiple bankruptcies to delay, hinder, or defraud U.S. Bank and that U.S. Bank may have prospective stay relief in this or any other case filed by the Debtor or any entity affecting U.S. Bank's ability to complete its foreclosure of the River Village House within the next two years.  A separate order will issue modifying the automatic stay to permit U.S. Bank to pursue a foreclosure in state court through completion and to provide prospective relief for a two-year period regardless of any future bankruptcy cases filed.

**Debtor has Abused the Bankruptcy System**. The final issue set for trial relates to the Debtor's bad faith filing of this and other bankruptcy cases.  The Court had issued an Order to Show Cause[42] why this case should not be dismissed due the Debtor's abuse of the judicial system and bad faith in a prior ruling.[43] As a recap from this prior ruling, several bankruptcy cases and adversary proceedings have been filed and multiple appeals have been pursued by the Debtor, Sam Zalloum, and the Bayou Trust.[44]

---

[42] Doc. No. 177, issued on February 25, 2019.

[43] Doc. No. 159.

[44] *See, e.g.*, Case No. 6:13-bk-04030-KSJ (Chapter 13 filed by Julie Zalloum in 2013), 6:13-ap-00127-KSJ (adversary proceeding filed by Sam Zalloum against River Oaks Community Services Association, Inc. in 2013), 6:13-bk-04561-KSJ (Chapter 7 filed by the Bayou Trust in 2013), 6:13-ap-00124-KSJ (adversary proceeding filed by the Bayou Trust against River Oaks Community Services Association, Inc. in 2013), 6:15-ap-00153-KSJ (adversary proceeding filed by Sam Zalloum against a bank, a trust, and two law firms in 2015), 6:14-bk-02971-KSJ (Chapter 11 filed by the Bayou Trust in 2014). There were multiple appeals from these cases, some are still pending.

Debtor filed her first Chapter 13 case in 2013.[45] Debtor's case was dismissed when she failed to file an Amended Chapter 13 Plan as the Court instructed her specifically to do by a date certain.[46] This bankruptcy case has been up to the District Court and Eleventh Circuit on several appealed orders.[47] Sam Zalloum filed an adversary proceeding in his wife's 2013 bankruptcy case against non-debtor parties. The Court dismissed that adversary proceeding for lack of jurisdiction because it could not resolve claims entirely between the non-debtor parties.[48]

So, Mr. Zalloum then filed a Chapter 7 bankruptcy case on behalf of Bayou Trust.[49] The Bayou Trust had an interest in property in the same area as the River Village House. Stay relief was granted so the secured creditor could proceed with foreclosure.[50] Mr. Zalloum sought appellate review of this ruling, and the District Court affirmed the Bankruptcy Court's order granting stay relief.[51] The District Court questioned why Mr. Zalloum was involved in an appeal of the stay relief order when it stated: "As an initial matter, it is not entirely clear who Mr. Zalloum is or why he is involved in this bankruptcy case or appeal."[52] Zalloum's arguments were rejected.

---

[45] Case No. 6:13-bk-04030-KSJ.

[46] Doc. No. 249 in Case No. 6:13-bk-04030-KSJ (entered March 6, 2015).

[47] *See, e.g.*, Case No. 6:15-cv-404-Orl-40 in the United States District Court for the Middle District of Florida (appeal of Order Dismissing Case in 6:13-bk-04030-KSJ); Case No. 16-10761-CC in the United States Court of Appeals for the Eleventh Circuit (appeal of Order Dismissing Case in 6:13-bk-04030-KSJ). The Eleventh Circuit remanded to the District Court because the Bankruptcy Court had not ruled on a Motion for Reconsideration of the Order Dismissing Case. The District Court then remanded to the Bankruptcy Court to rule upon the Motion for Reconsideration. Doc. No. 291 in Case No. 6:13-bk-04030-KSJ. The Motion for Reconsideration was denied. Doc. No. 296 in Case No. 6:13-bk-04030-KSJ. That Order was also appealed to the District Court. The District Court affirmed the Bankruptcy Court's Order. *See* Case No. 6:17-cv-561-Orl-40 in the United States District Court for the Middle District of Florida. A copy of the District Court's Order is on the Bankruptcy Court's docket. Doc. No. 331 in Case No. 6:13-bk-04030-KSJ (Entered February 1, 2018). Debtor also sought appellate review of an Order Granting Motion for Relief from Stay. Case No. 6:17-cv-881-Orl-41 in the United States District Court for the Middle District of Florida. The District Court dismissed that appeal because the Bankruptcy Court had dismissed the Debtor's case. Doc. No. 333 in Case No. 6:13-bk-04030-KSJ (entered July 2, 2018).

[48] Doc. No. 70 in Adversary No. 6:13-ap-00127-KSJ (Entered April 24, 2014).

[49] Case No. 6:13-bk-04561-KSJ.

[50] Doc. No. 109 in Case No. 6:13-bk-04561-KSJ (entered November 23, 2015).

[51] Doc. No. 154 in Case No. 6:13-bk-04561-KSJ (entered September 6, 2016) (District Court Case No. 6:15-cv-2068).

[52] Doc. No. 154, p. 3 in Case No. 6:13-bk-04561-KSJ (entered September 6, 2016).

71693309v.1

Two adversary proceedings were initiated related to the Bayou Trust bankruptcy case. One adversary proceeding was brought by Mr. Zalloum against a homeowner's association.[53] The Bankruptcy Court granted the homeowner's association's Motion for Summary Judgment and abstained from further action. The issue was whether unpaid homeowner's association dues constituted a lien against the Bayou Trust property—the Court found the dues constituted a valid and enforceable lien on the property but returned the dispute to state court to calculate the amount owed.[54] Mr. Zalloum sought appellate review of the Court's opinion, and the District Court affirmed the Bankruptcy Court.[55] The District Court made a specific finding that Mr. Zalloum's appeal was "meritless and frivolous."[56] Another adversary proceeding related to the Bayou Trust case was brought by Mr. Zalloum against various law firms and another trust.[57] This adversary proceeding eventually was dismissed without prejudice.[58] Mr. Zalloum again sought appellate review of the Bankruptcy Court's dismissal order (and other orders the Bankruptcy Court entered on reconsideration motions), and the District Court affirmed.[59]

About a year after Mr. Zalloum filed the Chapter 7 case on behalf of the Bayou Trust, Mr. Zalloum then filed an involuntary Chapter 11 petition **against** the Bayou Trust.[60] The Court dismissed the involuntary petition and cautioned Mr. Zalloum that if he filed another involuntary petition involving the Bayou Trust, the Court would assess sanctions against him.[61] The Chapter

---

[53] Adversary No. 6:13-ap-00124-KSJ.
[54] Doc. No. 144 in Adversary No. 6:13-ap-00124-KSJ (entered March 6, 2015).
[55] Doc. No. 188 in Adversary No. 6:13-ap-00124-KSJ (entered November 29, 2016) (District Court Case No. 6:15-cv-540).
[56] Doc. No. 188, p. 7 in Adversary No. 6:13-ap-00124-KSJ (entered November 29, 2016).
[57] Adversary No. 6:15-ap-00153-KSJ.
[58] Doc. No. 35 in Adversary No. 6:15-ap-00153-KSJ.
[59] Doc. No. 64 in Adversary No. 6:15-ap-00153-KSJ (entered February 22, 2017) (District Court Case No. 6:16-cv-1361) (the District Court could not review two of the orders requested because Mr. Zalloum's appeals were untimely, however, the one Order the District Court substantively reviewed was affirmed).
[60] Case No. 6:14-bk-02971-KSJ. The case was filed on March 17, 2014.
[61] Doc. No. 11 in Case No. 6:14-bk-02971-KSJ (entered April 10, 2014).

71693309v.1

7 Trustee eventually concluded her administration of Bayou Trust in March 2017.[62] No assets were distributed to creditors.

In the Debtor's case and second Chapter 13 bankruptcy, there were two adversary proceedings filed. Debtor filed an adversary proceeding against BONY largely duplicative of the matters discussed in this opinion[63] The second adversary is Adversary Proceeding 17-68, resolved in this Memorandum Opinion.   Both proceedings involve similar fraudulent releases of the underlying mortgages.

The Debtor and Bayou Trust have filed four bankruptcies and five separate adversary proceedings. Each case involves suspect and similar facts indicating these parties merely want to obstruct collection efforts of legitimate creditors by any means possible. They have a pattern of filing meritless, frivolous, and outlandish papers to stall the inevitable conclusion they cannot keep these pieces of property without paying for them. It is time for this abuse of the courts to end.

So, the Court issued its Order to Show Cause[64] to give the Debtor the opportunity to explain her conduct.  She failed to attend the trial and does not explain her conduct.[65]

Debtor has filed a farcical Chapter 13 Plan that pays none of her creditors and simply ignores her two largest creditors.  Her Chapter 13 Plan[66] provides for monthly payments of $275 per month. $25 goes to the Chapter 13 Trustee, and $250 goes to association claims. This monthly amount does not pay the association's claim.[67]  She proposes no payment to U.S. Bank, who is

---

[62] Doc. No. 158 in Case No. 6:13-bk-4561-KSJ.

[63] Adversary No. 6:18-ap-00039-KSJ. On March 14, 2019, the Court dismissed this adversary proceeding with prejudice and now will deny the Debtor's pending Motion for Reconsideration by separate order. (Doc. Nos. 27 and 29).

[64] Doc. No. 177.

[65] Debtor did file a written response to the Order to Show Cause (Doc. No. 199) making various untested, self-serving statements that she is acting in good faith.

[66] Doc. No. 11.

[67] River Oaks Community Services Association, Inc. has an allowed claim for $95,612.19.  River Oaks III has an allowed claim for $459.63.  Doc. No. 238 in Adversary Proceeding 17-68.

owed over $553,000.  Nor does she provide for any payment to Bank of New York Mellon on its Claim 5 allowed in the amount exceeding $1 million.[68]  She merely states she intends to avoid these mortgage liens, again relying on the fraudulent release.

Indeed, the Debtor no longer is eligible to file a Chapter 13 case now that the liabilities to these two creditors are determined.  The combined claims of U.S. Bank ($553,000) plus Bank of New York Mellon ($1 million) totals over $1,553,000, well over the eligibility limit for secured claims of $1,257,850.[69]

Debtor filed this and her prior case for delay, more litigation, and to obstruct and defeat the legitimate claims of these creditors.  She had and has no intention of actually using the Bankruptcy Court for a proper purpose to repay her obligations.  She has lived in and rented two homes for years without paying the valid mortgage, all the while filing repeated frivolous litigation and propounding a fraud on her creditors and this Court via the fraudulent release.  The Debtor has mocked the judicial system and dismissal is merited.

The only remaining question is whether an injunction barring the Debtor from filing future bankruptcy cases should issue.  Under Sections 105(a) and 349(a) of the Bankruptcy Code, courts may dismiss a case with a future bankruptcy filing injunction if "cause" exists.[70]  The term "cause" is not defined in the Bankruptcy Code.[71]  Courts, however, have found that cause exists to issue a filing injunction when debtors with serial bankruptcy filings file a case in bad faith.[72] The duration

---

[68] BONY's Claim 5 is allowed for $1,054,739.22.
[69] Section 109(e) of the Bankruptcy Code sets the debt limit for secured claims.
[70] *In re Cusano*, 431 B.R. 726, 737 (B.A.P. 6th Cir. 2010); *In re Casse*, 198 F.3d 327, 339 (2nd Cir. 1999); *In re Wilcoxon*, No. 18-62228-rk, 2018 WL 6016540 at *3 (Bankr. N.D. Ohio Nov. 15, 2018); *In re Chung*, No. 13-15338-JKO, 2014 WL 11279465 at *10 (Bankr. S.D. Fla. Jan. 7, 2014); *See also In re Ross*, 858 F.3d 779, 785 (3rd Cir. 2017)(bankruptcy courts possess the general authority to issue a filing injunction against a debtor).
[71] *In re Chung*, 2014 WL 11279465 at *10; *In re Singer*, 2001 WL 1825791at *2 (Bankr. M.D. Fla. Aug. 1, 2001) (Briskman, J.).
[72] *See Cusano*, 431 B.R. at 737; *In re Marshall*, 407 B.R. 359, 363 (B.A.P. 8th Cir. 2009); *Casse*, 198 F.3d at 339, 341; *In re Graffy*, 216 B.R. 888, 891-92 (Bankr. M.D. Fla. 1998)(Baynes, J.).

of the filing injunction is "within the court's discretion."[73]  And although a broad filing injunction is an "extreme remedy" that "should be narrowly tailored and sparingly used,"[74] courts have imposed permanent filing injunctions when debtors have "flagrantly abused the bankruptcy process."[75]

Here, the Court concludes that the Debtor has flagrantly abused the bankruptcy process.  I have never entered a permanent injunction barring future bankruptcy filings, but this case merits that result.  And, at trial, the attorney for the Chapter 13 Trustee agreed that a permanent injunction is the only way to stop this Debtor from continuing this pattern of frivolous litigation to defraud creditors and avoid paying legitimate debts.  I will dismiss this case with a permanent injunction prohibiting the Debtor from filing any future bankruptcy cases.

**Conclusion**.  Consistent with the rulings in this Memorandum Opinion, the Court will enter separate orders that overrules the Debtor's Objection to Claim 6-1 of U.S. Bank, grant U.S. Bank relief from the stay and prospective relief providing that no other bankruptcy will affect its foreclosure of the River Village House, enter Final Judgment for U.S. Bank in Adversary Proceeding 17-68 that confirms the enforceability and validity of U.S. Bank's first priority mortgage lien on the River Village House, and dismisses this case with prejudice imposing a permanent injunction prohibiting the Debtor from filing any future bankruptcy case.

###

---

[73] *In re Morris*, No. 3:10–BK–04143, 2010 WL 3943927 at * 9 (Bankr. M.D. Tenn.  Oct. 6, 2010)(citing *Casse*, 198 F.3d 327, 339 (2nd Cir. 1999)); See also *Wilcoxon,* 2018 WL 6016540 at *3.
[74] *In re Ross*, 858 F.3d 779,787 (3d Cir. 2017)(quoting *In re Packer Ave. Assocs.*, 884 F.2d 745, 747 (3d Cir. 1989)).
[75] *In re McCoy*, 237 B.R. 419, 422 (Bankr. S.D. Ohio 1999) (citing *In re Millers*, 90 B.R. 567, 568 (Bankr. S.D. Fla. 1988)).

71693309v.1

The Clerk is directed to serve a copy of this memorandum opinion on all interested parties.